UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,          :

                                       13 Cr. 155 (SHS)

                                   :

     - v. -

                                     :

ANNE THOMAS,          :

                      Defendant.          :
-------------------------------------------------------------------X

## SENTENCING MEMORANDUM ON BEHALF
## OF DEFENDANT ANNE THOMAS

JAMES R. DEVITA, ESQ.
Doar Rieck Kaley & mack
217 Broadway, Suite 707
New York, New York 10007
Phone: (212) 619-3730

*Attorney for Defendant Anne Thomas*

On behalf of my client, Anne Thomas, I submit this memorandum for the purpose of assisting the Court in arriving at a just sentence in her case —"sufficient, but not greater than necessary," in accordance with the sentencing considerations set forth in 18 U.S.C. § 3553(a). I respectfully request that the Your Honor sentence Ms. Thomas to a period of probation, and not imprisonment. That is the recommendation of the Probation Office, contained in the Presentence Report ("PSR") at pages 28-33. As the PSR recognizes, "given [Ms. Thomas'] useful and reliable assistance to the Government, and her low likelihood of recidivism, a sentence of incarceration does not appear to be necessary in this case." PSR at 29. Sending Anne Thomas to prison would serve no legitimate purpose. The reasons why a sentence of probation is sufficient in this case are several.

One is her cooperation with the government. As indicated in the November 16, 2015 letter to the Court from Assistant United States Attorneys Edward A. Imperatore and Andrea L. Surrat ("Govt. Letter") in support of a departure pursuant to § 5K1.1 of the United States Sentencing Guidelines ("USSG'), Ms. Thomas' cooperation has been significant. The Court is, of course, familiar with Ms. Thomas' cooperation, since Your Honor presided at the trial of her co-defendant, Charles Huggins, at which she testified. As the government points out, she "was a key Government witness" and "testified credibly, articulately, and forcefully." Govt. Letter at 5.

The government, however, also points out aspects of Ms. Thomas' cooperation with which the Court may not be familiar. For example, she met with the government approximately 17 times in the months before trial, in meetings that lasted three or four hours each. *Id.* Nor was her cooperation was not limited to those meetings, for she "also assisted the Government in developing investigative leads, reviewing her own files that had been seized pursuant to search warrants, and identifying early victims of which the Government had been unaware." *Id.* Her

"memory and insights regarding the events at issue were useful to the Government's development of trial strategy, and [she] was prompt and thoughtful in her comments during the preparation sessions." *Id.* Thus, Ms. Thomas' assistance to the government was substantial, and as the government agrees: significant and useful, USSG §5K1.1(a)(1); truthful, complete and reliable, §5K1.1(a)(2); extensive, §5K1.1(3); and timely, §5K1.1(a)(5). Also, while Ms. Thomas did not suffer any physical injury as a result of her cooperation, §5K1.1(a)(4), as the government also points out (Govt. Letter at 6), her decision to cooperate required her to break the Svengali like hold that Charles Huggins had her in for most of her adult life – which was no simple task, given her psychological susceptibility to the type manipulation and control that Huggins was able to exercise over her.

Ms. Thomas health issues– both mental and physical – represent another reason to avoid incarcerating her. Title 18 U.S.C. §3553(a) sets forth the factors for the Court to consider in determining the sentence that is "sufficient, but not greater than necessary" in a particular case. Among the first factors mentioned are "the history and characteristic of the defendant." §3553(a)(1). Ms. Thomas' mental health issues are significant. Although Dr. Sanford Drob, the defense expert psychologist, and Dr. Cheryl Paradis, the government expert, disagreed on the impact of Ms. Thomas' mental health issues on her ability to make a voluntary and knowing waiver of her Miranda rights, they agreed substantially in their diagnosis of her conditions. Both agreed, for example, that at the time of their examination of her, Ms. Thomas suffered from a Major Depressive Disorder and Generalized Anxiety Disorder. PSR ¶69. Those disorders – which appear to persist – would be exacerbated by a sentence of incarceration, and it would be easier to address them if she were on probation. *See* 18 U.S.C. §3553(a)(2)(D) (the Court should

2

consider the need "to provide the defendant with needed . . . medical care"). Similarly, addressing Ms. Thomas physical ailments – glaucoma, high cholesterol, high blood pressure, plaque build-up in her heart, back issues (PSR ¶65) – would be easier outside a prison setting.

Perhaps more significantly, Dr. Paradis and Dr. Drob also agreed that Ms. Thomas suffers from a long standing personality disorder that included dependent and submissive features. Transcript of June 20, 2014 Hearing ("6/20/14 Tr.") at 220, 223-24. As Dr. Paridis explained, a personality disorder means far more than mere personality traits. It is a lifelong condition that results in significant functional impairment. 6/20/14 Tr. at 237-39. The submissive/dependency features of Ms. Thomas' personality disorder made her especially susceptible to manipulation by Charles Huggins. *See* 6/20/14 Tr. at 241-42. While this does not excuse her participation in the offense conduct, it helps explain it and mitigate her culpability.

In considering "the nature and circumstances of the offense," §3553(a)(1), the Court should consider Ms. Thomas' relative role in it. As the Probation Office informs the Court, Ms. Thomas has "expressed the utmost remorse, regret and embarrassment for her actions in the instant offense." PSR ¶ 38. Nevertheless, her role was far less culpable than those of her co-defendants. There is no evidence, for example, that she ever solicited investments from any of the victims. Despite her exalted titles of "vice president" and "corporate secretary," she neither exercised discretion nor acted independently. She followed the directions of Charles Huggins. Although she came to understand over time that she was participating in a fraud, her faith in Huggins, and her dependence on him, were so strong that, like the investors, she initially believed in the legitimacy of the businesses, which had many trappings of legitimate businesses with significant overseas assets and opportunities. Her exposure to government officials and the

3

relatives of government officials of Liberia and Sierra Leone reinforced her initial credulity. The intimate involvement in the businesses of an attorney who she was led to believe was the first cousin of a United States Senator also lulled her suspicions. Finally, her participation in the proceeds of the fraud was far more limited than Huggins. She received a regular salary and living expenses, and occasional bonuses that Huggins usually took back from her to fund his schemes. Unlike Huggins, her lifestyle was far from extravagant, and as a result of her lifelong fidelity to him, she is destitute. She rues the day in the late 1960's when she left her position as a typist in the New York City Parks Department to follow Huggins into the music business. PSR ¶ 37.

Anne Thomas is a simple person, raised in poverty in Alabama, who followed a dream by coming to New York after graduating from a segregated high school in Birmingham. After beginning a new life as a young working woman, she blindly followed an unscrupulous man who took advantage of her simple good nature for her entire adult life. Even after their romantic relationship ended, Charles Huggins exploited her mercilessly. Ms. Thomas functioned not only as a secretary, bookkeeper and general office manager for Huggins' businesses – including his legitimate music business where she worked for over thirty years – but performed such menial jobs as cleaning the office and taking laundry to the cleaners for the "talent" managed by Huggins. It does not excuse her participation in the instant offense to say that she has suffered enough at the hands of Mr. Huggins, and has atoned for her part in his fraud by playing a significant role in bringing him to justice for his crimes. She deserves the mercy of this Court.

4

Dated:  December 4, 2015
        New York, New York

Respectfully submitted,

s/James R. DeVita
James R. DeVita (JRD 5659)
Attorney for Defendant Anne Thomas
DOAR RIECK KALEY & MACK
217 Broadway, Suite 707
New York, NY 10007
(212) 619-3730

5